By the Court.
Oakley, Ch. J.
There is one respect in which an insurance against marine risks seems to be distinguished from all other contracts. Even when the policy has been signed and delivered, and the premium paid or secured to be paid, the contract may be dissolved at the election of one of the parties without the consent or knowledge of the other. It is to the assured alone, however, that this privilege belongs, and it is only in one mode that it can be exercised by him. He has not an unlimited discretion to annul the contract when and how he pleases. The, contract can only be dissolved so as to exonerate him from the payment of the premium, or entitle him to demand its return, by his electing not to commence the voyage or adventure to which the insurance relates. If a ship insured to Havre sails for Liverpool, or goods insured to one port are shipped for another, or are not shipped at all, the contract is at an end, and the underwriters lose their premium. But if the voyage or adventure insured is not abandoned nor broken up, the assured cannot put an end to the contract by a mere declaration and notice of his intentions. He cannot dissolve the contract because he is dissatisfied with its terms, and prefers to become his own insurer, or believes he can effect a new insurance covering the same risks at a lower rate of premium. Where the risks described in the policy are so commenced that by the terms of the insurance the underwriters would be liable for a loss, they are entitled *146 to retain or reeoyer the premium, unless it is proved that before the risks commenced or terminated they had consented to dissolve the contract; and we apprehend that these rules are just as applicable where the policy covers successive risks, as where it is confined to a single voyage, although when the risks are not merely successive, but distinct and independent, so that the premium may be apportioned, the non-inception of a portion of the risks will doubtless warrant a proportionate return or diminution of the premium.*
It is not denied in the case before us that shipments, such as are described in the policy, were made to the defendant and Law between the 1st of April, 1851, and the 7th of the following June, and that the premiums on these added to the premiums before earned amounted to the full sum that the referee reported to be due. The argument, therefore, for the defendant rests entirely on the truth of the assertion that the insurance was terminated on the 1st of April. — First, By the change which then took place in the ownership of the 'steamers by which shipments covered by the policy were expected to be made, and second, By the notice then given to the plaintiffs that the defendant would no longer use the policy. It is manifest that neither of these grounds was considered to be tenable by the referee, and as we are entirely of the same opinion, we can see no reason for disturbing his report.
We cannot say that the change in the ownership of the steamers made any change in the rights or contract of the parties, without giving a construction to the policy that its terms plainly forbid. It is very probable that the defendant, when he effected the insurance, believed that all the shipments he meant to cover would be made in the steamers in which he was interested, and. of which,.it seems, he was the agent; but if he intended to limit the insurance to shipments so made, it is an intention that the policy ought to have expressed, and, if its expression was omit *147 ted by accident or mistake, we have no power upon the pleadings and evidence before us to supply the defect. The answer does not seek a reform of the policy, npr does the evidence show that it could be reformed. We must, therefore, construe it as it is. By its terms it covers every shipment made to the defendant or Law; by a steamer on the route described, without any reference whatever to the ownership of the vessel, so that had a loss happened of a shipment so made in a steamer, in which the defendant had no interest whatever, it cannot be doubted that the plaintiffs would have been responsible for the payment — an intention not to be collected from the terms of the policy, however probable in itself, would have been no defence. Hence, as the plaintiffs assumed the risks of all the shipments described in the policy that should be made to the defendant or Law until the sum mentioned in the policy should be exhausted, they are entitled to the premium upon all that were in fact made.
Now as to the notice that is alleged to have been given to the plaintiffs, the silence of the referee renders it probable that he deemed the evidence insufficient to establish the fact, and upon looking into the evidence, we are not surprised that he arrived at this conclusion. But admitting the notice, as stated, to have been given on the 2d April, as there is no proof that its terms were then assented to by the plaintiffs, it was, as has already been shown, wholly ineffectual. It was not in the power of the defendant to discontinue the insurance, in other words, rescind the contract, without discontinuing the risks that the insurance covered. Until shipments were made to the full amount of the sum mentioned in the policy, ($50,000,) it was only by the consent of both parties that the contract could be rescinded. The referee has found that this mutual consent was not given until the month of June, nor until after the 9th of that month, and we cannot say that his finding is against evidence or the weight of evidence. Hence, as the insurance remained in force until, after the day mentioned, it is a necessary consequence, and is not denied to be so, that the plaintiffs became entitled, as premiums earned, to the full sum reported by the referee, and for which, with interest, this judgment has been tendered.
The judgment is therefore affirmed, with costs.

 The doctrine of the Italian jurists is, that the assured can never put an end to the contract by his own choice or act, and that it is only where the non-inception of the risks is owing to force or accident that he is excused from the payment of the premium; hut this doctrine is peculiar to Italy. — (Casariges, Dis. 1, N. 82, 585, Benecke 133, 2 Emerigon 181.) — R.